IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 4:19CR521 |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERT AIAD-TOSS, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION FOR |
| Defendant. | ) | HEARING ON PRETRIAL DETENTION |

Now comes the United States of America, by and through counsel, Justin E. Herdman, United States Attorney, Bridget M. Brennan, First Assistant United States Attorney, and Ranya Elzein, Assistant United States Attorney, and hereby submits the following response in opposition to Defendant's Motion for Hearing on Pretrial Detention, R. 46.

**I.    Background**

    **A.    Procedural History**

On August 28, 2019, a federal grand jury returned an indictment charging Defendant Albert Aiad-Toss with four counts of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a), and one count of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). (R. 5: Indictment, PageID 16-21). The indictment named four separate victims. (*Id.*) The time period in which the conduct occurred was June 1, 2019 through June 20, 2019. (*Id.*)

On September 18, 2019, Aiad-Toss waived his right to a detention hearing and consented to detention pending trial, reserving the right to raise the issue of detention at a later date should circumstances change. (R. 20: Waiver, PageID 57).

On November 19, 2019, a federal grand jury returned a superseding indictment adding three charges of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a), against Aiad-Toss.  (R. 28: Superseding Indictment, PageID 94-101).  The three new counts added two additional victims.  (*Id*.)   These counts extended the time period by one day to June 21, 2019.  (*Id*.)

Aiad-Toss now moves for a hearing on pretrial detention and release on home detention and electronic monitoring.  (R. 46, PageID 169-173).  For the following reasons, the Court should deny Aiad-Toss's motion.

B. **Relevant Facts**

Aiad-Toss's charges arise from an approximate thirty-day period during which he coerced minor girls to engage in sex acts with him in exchange for money.  In those thirty days, he victimized six girls ranging from 12 to 15 years old.  These victims came from struggling homes, and some experienced limited adult supervision.

Aiad-Toss, a 52-year-old emergency room physician, met the victims over the mobile application Snapchat.  He first convinced them to spend time with him in exchange for money, and then graduated to coercing them to engage in sex acts.  Specifically, Aiad-Toss picked the victims up at public places to avoid detection by their parents.  He took them to hotels in various Ohio cities where he rented rooms for the purpose of engaging in sex acts.  They would enter the hotels through the side doors for fear of hotel employees seeing multiple people enter a room.  Aiad-Toss met the victims outside of his hometown to avoid being seen by his community.

When he and the victims arrived to the hotel room, he gave them alcohol and marijuana before engaging in sex acts.  The sex acts included vaginal intercourse, oral sex, and other acts.  On at least one occasion, he forced the victims to play a sex game.  The game required the

2

victims to choose from a group of cards on which he had written sex acts and associated prices. Aiad-Toss forced each victim to perform the sex act written on the card she pulled, and he paid her the listed price in return. Aiad-Toss paid the victims in cash or via online transfers through mobile applications like CashApp and Venmo.

Aiad-Toss also used force with some of the victims. For example, he threw one of the victims onto the bed before having vaginal sex. He performed oral sex on another victim despite her attempts to close her legs and push him off. He digitally penetrated yet another victim while she screamed and resisted, stopping only upon another victim's intervention. In another instance, one of the victims woke up in a hotel after a night with Aiad-Toss with baby oil all over her body. She did not remember engaging in sex acts with Aiad-Toss, but he told her that it was the best sex ever.[1] Notably, at the time of his arrest, Aiad-Toss was found with approximately 120 blister packs of Klonopin, which, when mixed with alcohol, can lead to loss of consciousness.

Additionally, Aiad-Toss caused one of the victims to send him images and video of her masturbating. He directed her to do so over Snapchat and paid her in exchange for the material via Venmo.

Finally, relevant here, Aiad-Toss told law enforcement that he earned approximately $300,000 per year as a physician. After he was detained in this case, his wife sold their house for $782,500.

---

[1] On March 13, 2020, in response to the Motion for a Bill of Particulars, the government provided defense counsel this and additional information regarding Aiad-Toss's uses of force, threats of force, fraud, and coercion.

## II. Argument

The Court should deny Aiad-Toss's motion because he has failed to show a change in circumstances warranting reconsideration of detention. Even if the Court finds that Aiad-Toss has made such a showing, the Court should deny his request for release because he has not rebutted the applicable presumption of detention.

### A. Aiad-Toss has failed to show a change in circumstances supporting his request for a hearing.

As explained above, Aiad-Toss waived his right to a detention hearing by executing a signed waiver stating that, having been "advised of the nature or the charge and of his [ ] rights, and under advice of counsel, waives in open court his [ ] right to a detention hearing and consents that he [ ] be held without bail pursuant to Title 18 U.S.C., Section 3142 (e) and (i) but reserves the right to raise the issue of detention at a later date should circumstances change." (R. 20: Waiver, PageID 57). While Aiad-Toss reserved the right to revisit the issue of detention at a later date, that right is predicated on a change in circumstances, which would allow him to re-open the issue of detention. A detention hearing may be reopened only after a "judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f).

Here, the only potential change in circumstances that Aiad-Toss identifies is defense counsel's current inability to visit Aiad-Toss in jail due to the COVID-19 virus. While the government appreciates the limitations that COVID-19 currently imposes on counsel's ability to meet with Aiad-Toss in person, the limitation is not a change in circumstances related to Aiad-Toss's risk of flight or danger to the community. Indeed, counsel's inability to meet with Aiad-

4

Toss in person has no bearing on whether Aiad-Toss would appear for hearings or pose a danger to the community upon his release, particularly the danger he poses to young girls. Accordingly, Aiad-Toss is not entitled to reopen the issue of detention, and the Court should deny his request for a hearing.

### B. Aiad-Toss has failed to rebut the presumption that he poses a risk of flight and a danger to the community.

Even assuming Aiad-Toss is entitled to reopen the issue of detention, the Court should deny his request for relief because he has not rebutted the applicable presumption of detention. "Under the Bail Reform Act, 18 U.S.C. § 3142, . . . a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing 18 U.S.C. § 3142(e)). There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if there is probable cause to believe that he committed one of the offenses listed in section 3142(e)(3), which includes offenses involving a minor victim under 18 U.S.C. §§ 1591 and 2251. 18 U.S.C. § 3142(e)(3)(e).[2]

"A grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged. Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish

---

[2] The presumption also applies under Section 3142(e)(3)(d), which provides for a presumption of detention where there is probable cause to believe that the defendant committed "an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed," which includes 18 U.S.C. 1591. *See* 18 U.S.C. § 3142(e)(3)(d); Title 18, United State Code, Chapter 77.

5

the presumption in favor of detention." *Stone*, 608 F.3d at 945 (citation omitted). The presumption imposes a "burden of production" on the defendant, and the government retains the "burden of persuasion." *Id*. "A defendant satisfies his burden of production when he 'com[es] forward with evidence that he does not pose a danger to the community or a risk of flight.'" *Id*. (citation omitted). "Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.'" *Id*. (citation omitted).

In determining whether the government has met its burden of persuasion, the Court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591, . . . or involves a minor victim . . .;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person . . .; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

Here, the Superseding Indictment establishes that there is probable cause to believe that Aiad-Toss committed offenses involving numerous minor victims in violation of 18 U.S.C. §§ 1591(a) and 2251. *See* R. 28: Superseding Indictment, PageID 94-101. As such, there is a rebuttable presumption that Aiad-Toss poses a risk of flight and a danger to the community. A review of the Section 3142(g) factors establishes that Aiad-Toss has not rebutted this presumption.

First, the nature and circumstances of the offense are serious and strongly support detention. As described above, Aiad-Toss victimized six girls ranging from 12 to 15 years old by coercing, and sometimes physically forcing them, to engage in sex acts with him for money. He also coerced a victim to perform sex acts for him in exchange for money, victimizing her

6

without even meeting her in-person.  He coerced and paid these victims using his phone through Snapchat, CashApp, and Venmo.  He also drove the girls to hotels in various cities, gave them alcohol and drugs, forced them to play sex games, and took steps to avoid detection.  Such circumstances indicate that he poses a great danger to the community if released, especially young and vulnerable children, and supports a finding of detention.

Nothing about the COVID-19 pandemic reduces Aiad-Toss's danger to others.  In fact, Aiad-Toss presents even more danger to the community than he did at the time of the Court's original detention order.  The community is now more vulnerable to such danger given the COVID-19 pandemic.  Indeed, the very demographic that Aiad-Toss targeted is uniquely vulnerable during this pandemic.  He targeted young girls from struggling homes who had little supervision.  Children are now home from school and cannot attend after school activities, subjecting them to less supervision and providing more time to spend on their cellular phones and social media.  That is exactly how Aiad-Toss was able to coerce his victims—through mobile applications and social media.  As such, he was able to harm one of his victims without even meeting her in-person.  This danger is even greater now with COVID-19, and electronic monitoring and home detention would not prevent Aiad-Toss from using a cellular phone to commit the very same offenses again.

Aiad-Toss's history and characteristics also support detention.  Specifically, they support a finding that he poses a risk of flight.  Before his arrest, Aiad-Toss worked as an emergency physician making approximately $300,000 per year.  Additionally, after his detention, his wife sold their house for $782,500.  He therefore has the financial means to flee.  Aiad-Toss argues that he does not have a valid passport and that the current COVID-19 travel restrictions make it difficult for him to travel.  Travel restrictions make certain types of flight more difficult, but

many means of transport exist, and flight risk is not limited to a defendant physically leaving a jurisdiction; it looks to whether a defendant can be trusted to "appear" "as required."  18 U.S.C. § 3142(e).  During a time when community and law-enforcement resources are devoted to fighting COVID-19, it may be easier for a motivated defendant to abscond.  Just as a defendant's access to resources increases his risk of flight, so too does law enforcement's lack of access to resources to safeguard against defendant's flight.  *See* 18 U.S.C. § 3142(g)(3)(A) (requiring consideration of the defendant's "financial resources"); *United States v. Townsend*, 897 F.2d 989, 996 (9th Cir. 1990) (considering defendants' "access to substantial sums of cash").  Furthermore, the restrictions imposed by the response to COVID-19 are also not necessarily a deterrent to flight, for someone--like Aiad-Toss--facing substantial charges and the likelihood of lengthy incarceration upon his conviction.

These reasons establish that the weight of evidence of risk of flight and danger to the community is strong, and also demonstrates the serious danger that he presents to the safety of certain members of the community.

Finally, counsel's inability to currently meet with Aiad-Toss in person does not support release.  First, Aiad-Toss does not identify any limitations to communication by phone or letter.  And the Northeast Ohio Correction Center, where Aiad-Toss is housed, has video conferencing capabilities to facilitate attorney-client meetings.[3]  Second, the trial in this matter is not scheduled until June 1, 2020.  Thus, any prejudice that Aiad-Toss may suffer from not being able to meet his counsel in-person is minimal at this time.  Moreover, Aiad-Toss has offered no

---

[3] The availability of videoconferencing for attorney-client meetings was confirmed with the U.S. Marshal's Service this morning.  Absent conflicts with court hearings, defendants and their attorneys can use the equipment to facilitate conferences.

8

evidence that he is uniquely situated with respect to the effect of COVID-19. Releasing inmates to home detention and electronic monitoring, as he requests, would create an avalanche of inmates seeking release for similar reasons and place an undue burden on the pretrial services officer and the courts.

In sum, Aiad-Toss continues to pose a risk of flight and serious danger to the safety of the community – namely, children, and he has failed to rebut the presumption of the same. Moreover, the inability of counsel to currently meet Aiad-Toss in person due to COVID-19 does not diminish the public interest in keeping dangerous offenders off the streets.

### III. Conclusion

For the foregoing reasons, the Court should deny Aiad-Toss's Motion for Hearing on Pretrial Detention, R. 46.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By: /s/ Ranya Elzein
Ranya Elzein (OH: 0090887)
Bridget M. Brennan (OH: 0072603)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3929/3810
(216) 522-8355 (facsimile)
Ranya.Elzein@usdoj.gov
Bridget.Brennan@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on this 25th day of March 2020, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

                                                    */s/ Ranya Elzein*
                                                    Ranya Elzein
                                                    Assistant U.S. Attorney