# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | CASE. NO. 4:19-CR-00521 |
|---|---|---|
| Plaintiff | ) ) ) | JUDGE PAMELA A. BARKER |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR** |
| ALBERT AIAD-TOSS | ) ) | **HEARING ON PRETRIAL DETENTION** |
| Defendant | ) | |

Currently pending is Defendant's Motion for Hearing on Pretrial Detention filed on March 23, 2020 ("Defendant's Motion"). (Doc. No. 46.) On March 25, 2020, the Government filed an Amended Response In Opposition to Defendant's Motion. ("the Opposition"). (Doc. No. 48.) For the reasons set forth below, Defendant's Motion is DENIED.

On August 28, 2019, a federal grand jury returned an indictment charging Defendant Aiad-Toss with four counts of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a), and one count of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a). (Doc. 5, PageID # 16-21.) On September 18, 2019, Defendant Aiad-Toss waived his right to a detention hearing and consented to being held without bail pursuant to Title 18 U.S.C. § 3142(c) and (i), but "reserve[d] the right to raise the issue of detention at a later date should circumstances change." (Doc. No. 20, PageID # 57.) On November 19, 2019, a federal grand jury returned a superseding indictment adding three charges of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a) against Defendant Aiad-Toss. (Doc. No. 28 PageID # 94-101.)

1

In Defendant's Motion, Defendant requests a hearing on the issue of his pretrial detention and ultimately requests that this Court order his release from the Mahoning County Jail in Youngstown, Ohio where he is presently detained, subject to any conditions deemed appropriate. 18 U.S.C. § 3142(a)(2). Defendant sets forth the factors to be considered in determining "whether there are conditions of release that will reasonably assure the appearance of [Defendant] as required and the safety of any other person and the community" pursuant to 18 U.S.C. § 3142(g), but addresses only subsections (3) and arguably, (4), i.e., "the history and characteristics of the person", and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." (Doc. No. 46, PageID # 170-171.) Specifically, Defendant asserts that he is 52 years old, has been a practicing board-certified emergency medical physician for the past 24 years without incident or complaint, and has no prior arrests or other criminal history. He has had his medical license suspended indefinitely as a result of the charges against him. He is a naturalized U.S. citizen, and his passport has already been seized by law enforcement and he did not previously renew his Egyptian passport nor register with the Egyptian Embassy in the U.S. He submits that he will reside with his wife in Canfield, Ohio if he were released where home detention with electronic monitoring would reasonably assure his appearance while protecting the safety of other persons and the community under 18 U.S.C. § 3142. *Id.* [1]

The only "change in circumstance" that Defendant Aiad-Toss identifies since he executed the waiver of a detention hearing and consented to being detained pending trial is the

---

[1] All of this information set forth by Defendant Aiad-Toss was known to him at the time he waived the detention hearing. See 18 U.S.C. § 3142(a).

"circumstances involving the current COVID-19 outbreak". (Doc. No. 46, PageID # 171.) Specifically, Defendant Aiad-Toss points out that the Mahoning County Sheriff's Office has implemented an indefinite suspension of inmate visitation and, while conceding that it does not currently encompass attorney visitation, notes that his counsel is 68 years old and therefore considered to be at high risk for severe illness by the CDC should he be exposed to the COVID-19 virus. (Doc. No. 46, Page ID # 171.) According to Defendant, his release from pretrial detention would enable he and his counsel to "more meaningfully confer for purposes of preparing for Trial in this case." (Doc. No. 46, Page ID # 172.)

As the Government correctly notes in its Opposition, under 18 U.S.C. § 3142(f), a detention hearing may only be reopened after a "judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." (Doc. No. 48, PageID # 187.) According to the Government, defense counsel's current inability to visit Defendant Aiad-Toss in jail due to the COVID-19 virus is not a change in circumstances related to Aiad-Toss's risk of flight or danger to the community." (*Id.*) The Court agrees with the Government.

First, Defendant himself admits that the Mahoning County Jail's suspension of inmate visitation does not encompass attorney visitation. Indeed, the Government points out that the Mahoning County Jail's COVID-19 restrictions do not appear to preclude access to videoconferencing, citing https://mahoningsheriff.com/index.php/inmate-info. (Doc. No. 48, Page ID # 191.) And, Defendant Aiad-Toss has not identified any limitations to communication by phone, videoconferencing, or writing. Moreover, releasing Defendant to home detention and

electronic monitoring creates its own risks and undue burden on pretrial services. Location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing.

Independent of and in addition to the fact that Defendant has not demonstrated a change of his circumstances to warrant a detention hearing, consideration of the factors set out in 18 U.S.C. § 3142(g) demonstrates that Defendant Aiad-Toss has not rebutted the applicable presumption in favor of detention, i.e., he has not presented sufficient evidence that he does not pose a danger to the community or a risk of flight, and the Government has met its burden of persuasion that he should be detained.

The charges pending against Defendant Aiad-Toss involve six separate minor victims. There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of Defendant as required and the safety of the community if there is probable cause to believe that he committed one of the offenses listed in section 3142(e)(3), which includes offenses involving a minor victim under 18 U.S.C. §§ 1591 and 2251. 18 U.S.C. § 3142(e)(3)(e).[2] The presumption also applies under Section 3142(e)(3)(d), which provides for a presumption of detention where there is probable cause to believe that Defendant committed "an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years

---

[2] As asserted by the Government, the grand jury indictments established probable cause to believe that Defendant Aiad-Toss committed the crimes listed in section 3142(e)(3) with which he is charged and therefore, the Government fulfilled its burden of establishing the presumption in favor of detention. (Doc. No. 48, PageID # 189, citing *United States v. Stone*, 608 F.3d 939, 945.)

4

or more is prescribed," which includes 18 U.S.C. § 1591. *See* 18 U.S.C. § 3142(e)(3)(d); Title 18, United States Code, Chapter 77.

The nature and circumstances of the offenses and the nature and seriousness of the danger to any person or the community posed by Defendant Aiad-Toss's release are serious and weigh in favor of detention. According to the Government, Defendant Aiad-Toss victimized six girls ranging from 12 to 15 years old by coercing, and sometimes physically forcing them, to engage in sex acts with him for money. It is alleged that Defendant coerced one victim to perform sex acts for him in exchange for money, victimizing her without even meeting her in-person. He coerced and paid these victims using his phone through Snapchat, CashApp, and Venmo. While the location monitoring that Defendant proposes may offer useful information about where he is, it would provide little useful information about what he is doing. The ready accessibility of smart phones and digital communication devices would make it all too easy for him to commit the same types of crime(s) that he is accused of committing with other young, vulnerable girls.

Neither Defendant Aiad-Toss or the Government has provided information to this Court to allow it to evaluate the weight of the evidence against Defendant. While Defendant Aiad-Toss points to his lack of a criminal history and long-standing medical practice and ties to his community in support of his request for release, the Government points to the fact that he has the financial means to flee – he earned approximately $300,000 per year as an emergency physician and his wife sold their home for $782,500 after his detention. The Pretrial Services Report also indicates that at the time of his interview on September 13, 2019, Defendant Aiad-Toss admitted to having a 401k account with an approximate balance of $300,000 and owning other real estate. And, while Defendant Aiad-Toss does not have his passport and has not

5

renewed his Egyptian passport or registered with the Egyptian Embassy, this does not mean he could not flee to somewhere in the United States and not appear. Indeed, the Pretrial Services Report indicates that after the Complaint was filed and a warrant issued on 7/1/2019, Defendant Aiad-Toss was located in and transferred to Ohio from Broward County, Florida. And, as the Government contends, any restrictions imposed by the response to COVID-19 are not necessarily a deterrent to flight for Defendant Aiad-Toss who is facing substantial charges and the potential for lengthy incarceration if he is convicted of the charges.

The Court does acknowledge that conferring with counsel by means of videoconference, telephone or in writing is not as meaningful as conferring in person and the Government appears to concede this fact when it notes that since the trial is not scheduled until June 1, 2020, "any prejudice that Aiad-Toss may suffer from not being able to meet his counsel in-person is minimal at this time."[3] Indeed, Defendant Aiad-Toss has filed a motion to continue the trial setting forth three separate bases for the request: his inability to meaningfully meet and confer with counsel because of the COVID-19 pandemic; defense counsel is still in the process of obtaining and reviewing his full file and complete discovery from Defendant's prior counsel; and Defendant Aiad-Toss anticipates filing a motion to suppress related to his custodial interrogation and needs to retain an expert for purposes of same. The Government has not yet responded to that motion to continue the trial.

Since the COVID-19 pandemic and impact on counsel's ability to confer with Defendant Aiad-Toss, as well as the Court's ability to conduct hearings and trials is a fluid situation, the Court can and will evaluate any continuing inability to meet personally with Defendant in the context

---

[3] Doc. No. 48, PageID # 191.

of a motion to continue the trial.  But, in the context of Defendant's Motion which is the subject of this Memorandum and Opinion, the current inability of defense counsel to meet and confer with Defendant in person is not a change in circumstance warranting granting Defendant's Motion and releasing him.

For the reasons stated herein, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

_____  3/30/20
Judge Pamela A. Barker